**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JENNIFER MCNICHOLS,**

        **Plaintiff,**

                                    **Civil Action 2:16-cv-509**
**vs.**                             **Judge James L. Graham**
                                    **Chief Magistrate Judge Elizabeth P. Deavers**


**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**


## REPORT AND RECOMMENDATION

Plaintiff, Jennifer McNichols, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for social security disability insurance benefits and supplemental security income. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 21), and the administrative record (ECF Nos. 9, 10). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff maintains that she became disabled on January 1, 2009,[1] as a result of degenerative disc disease, depression, and carpal tunnel syndrome. (R. at 178.) In April 2009, Plaintiff filed applications for both supplemental security income and disability insurance benefits.

---

[1] The ALJ incorrectly wrote that Plaintiff's alleged onset date was August 1, 2007. (R. at 848.)

(R. at 139–49.)   Plaintiff's applications were denied initially and upon reconsideration.   Plaintiff then sought a *de novo* hearing before an administrative law judge ("ALJ").   (R. at 104–05.)

On May 27, 2011, Plaintiff, represented by counsel, appeared and testified at the video hearing.   (R. at 36–58.)   On June 22, 2011, ALJ Ken B. Terry ("ALJ Terry") issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.   (R. at 16–25.)   On August 29, 2011, Plaintiff filed a Request for Review of Hearing Decision Order.   (R. at 11–12.)

Following the Appeals Council denial of Plaintiff's request for review, she filed an action in United States District Court under *McNichols v. Commissioner of Social Security*, Case No. 2:12-cv-1068.   This Court remanded Plaintiff's claim for a new hearing and decision.   (R. at 935–54.)   Specifically, this Court held ALJ Terry failed to consider the medical evidence supporting mental limitations and failed to properly assess Dr. Miller's opinion.

The Appeals Council subsequently vacated and remanded ALJ Terry's decision.   (R. at 955–58.)   On December 17, 2014, ALJ Edmund E. Giorgione   ("ALJ" or "ALJ Giorgione") held a supplemental hearing, at which Plaintiff, represented by counsel, appeared and testified.   (R. at 909–26.)   A vocational expert also appeared and testified at the hearing.   (R. at 926–33.)   On June 18, 2015, the ALJ found that Plaintiff was not disabled.   (R. at 846–58.)   On April 5, 2016, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision.   (R. at 835–42.)   Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

### A. Plaintiff's Testimony

Plaintiff testified at the December 17, 2014, administrative hearing that she last worked in January 2009, as a school substitute janitor.   (R. at 910.)

Plaintiff testified that her physical complaints stem from fibromyalgia and back problems. (R. at 913.)   She testified that she experiences pain from her beltline up to neck, her pain radiates down her right leg.   (*Id.*)   She also testified that she experiences problems with wrists and hands and her fingers lock up.   (*Id.*)   She was 5'2" and at the time of the hearing weighed 260 lbs.   (R. at 917.)

As to her mental health issues, Plaintiff testified that she has problems with friends and family, "[o]ne minute I can be fine and happy . . . and the next minute I am the worst person around . . . I go off, I am hateful."   (R. at 915.)   She testified that she does not like to be in crowds, she gets very irritable and argues with strangers.   (*Id.*)   Plaintiff testified that she likes to be around her dogs.   (*Id.*)   Plaintiff also testified that she gets easily agitated and does not want to be around people.   (R. at 921.)   She continued that she would rather be off by herself which she does so daily for about half of the day.   (R. at 921–22.)   Plaintiff further testified that she cries on a daily basis.   (R. at 922.)

As to daily activities, Plaintiff testified that she can sweep for five minutes, but then needs to sit or lay to try to stretch her back out.   (R. at 913.)   If that does not ease her pain, Plaintiff testified that she "ends up on the floor trying to get it to ease up."   (*Id.*)   Plaintiff estimated that she may lay down from three out of eight hours.   (R. at 914.)   She usually falls asleep watching TV, and noted she does not read.   (*Id.*)   She can dress herself but sometimes needs help with

socks and shoes.  (R. at 916.)  She is able to shower and bathe herself.  (*Id.*)  She has a driver's license and drove the day prior to the hearing.  (*Id.*)  She tries to help with chores but feels she is "not a whole lot of help."[2]  (*Id.*)  She also testified that she mows with a push mower, but that she can only do so for "maybe 5 minutes" before her back starts to hurt.  (R. at 917.)  She talks with a couple of friends on the phone.  (*Id.*)  She tries to see an aunt once a week during the summer and goes to the beach but doesn't go in the water.  (R. at 925–26.)

Plaintiff testified that she can lift a gallon of milk.  (R. at 914.)  She has difficulty with stairs describing that when she climbs stairs she does not have enough strength so she holds onto the handrails to get her up the stairs.  When coming down stairs she has leg cramps which cause her "legs just want to give out."  (*Id.*)

She can walk about half a block, then her back and knees start to hurt.  (R. at 923.)  She believes she can stand in place maybe 15 minutes.  (R. at 924.)  She sleeps 5 to 6 hours per night tossing and turning and naps two to three hours a day.  (R. at 924–25.)

## B. Vocational Expert Testimony

The vocational expert ("VE") testified at the administrative hearing that Plaintiff's past jobs include a school janitor, a medium exertion, unskilled job, but performed at the light level; a machine operator, light to medium exertion as Plaintiff performed it; and a fast food worker, a light, unskilled position.  (R. at 927–28.)

The ALJ proposed a hypothetical regarding Plaintiff's residual functional capacity ("RFC") to the VE.  (R. at 928–29.)  Based on Plaintiff's age, education, work experience, and her RFC, ultimately determined by the ALJ, the VE testified that Plaintiff could perform her past

---

[2] This is inconsistent with the activities Plaintiff reported in her application for disability, which include taking care of her children, cooking, laundry, dusting, and shopping.  (R. at 256, 258.)

relevant work, along with approximately 735,000 unskilled, medium exertional jobs in the national economy such as a dishwasher, sandwich maker, or prep cook. (R. at 929–30.)

### III.    MEDICAL RECORDS

This review of medical evidence incorporates the review contained this Court's March 18, 2014, Opinion and Order. (*See*, R. at 935–54.)

**A. Mental Impairments**

**1. Scioto Paint Valley Mental Health Center (Scioto)**

Plaintiff received treatment at Scioto Paint Valley Mental Health Center ("SPVMHC") from March 2010 until at least April 2011. (R. at 315–18, 739–51, 825–34.) Plaintiff reported that her depression started six or seven years prior when her grandmother died and that she had struggled since. She indicated that she felt discouraged by her physical condition as she had injured her back. She further indicated that she was able to function and complete her daily activities but that she did not have the energy to do these activities. She also reported that she did not sleep well at night. The intake clinician diagnosed Plaintiff with major depressive disorder and assigned her a Global Assessment of Functioning ("GAF") score of 54. (R. at 733–38.) Clinical notes reflect ongoing problems with anxiety, depression, lack of energy to do things, and interpersonal problems. (R. at 315–18, 739–51, 825–34.) In July 2010, Plaintiff reported that Cymbalta helped relieve her depressive symptoms. (R. at 745.) On November 22, 2010, Plaintiff reported her medications were helping somewhat, but she still struggled day-to-day with her mood. Her main complaint was elbow pain, not mental symptoms. (R. at 318.) On December 13, 2010, Plaintiff reported that an increase in her medications helped her mood, resulting in her becoming more talkative. (R. at 316.)

On April 19, 2011, Plaintiff's counselor noted that Plaintiff "continues to have the ability to be employed but lacks motivation." (R. at 825.) She questioned Plaintiff's diminished ability to work due to her health problems and encouraged her to get out of the house, visit family and friends, stop procrastinating, and stop feeling sorry for herself. (R. at 825.) Treatment intervention included encouraging Plaintiff to take responsibility for her choices and remain open to considering change. (*Id.*)

Plaintiff was discharged from Scioto in October 2012, with a last contact date of July 17, 2012, due to non-compliance with treatment. (R. at 1041–45.) The discharging social worker and counselor noted that Plaintiff had been "coming for more than 2 years hoping to obtain Social Security benefits so she would have an income [without] working," that Plaintiff "continued to hope for Social Security benefits and had no interest in earning a paycheck," that she complained mostly about her physical health problems. (R. at 1041.) They further reported that Plaintiff "was not invested in attending to groups to learn coping skills, decision making, etc." (R. at 1042.)

Plaintiff was referred back to Scioto on referral from her attorney on June 3, 2014. (R. at 1141.) Plaintiff stated that she was willing to do whatever was "suggested to show social security evidence of her disability." (*Id.*) Plaintiff preferred outpatient treatment, she was not invested in attending groups. (R. at 1140.) On mental status examination, Plaintiff appeared to be anxious and depressed with a flat affect and pressured speech, she had an average demeanor, was cooperative, and appeared to have average intelligence, and she reported no impairment of memory, attention, or concentration. (R. at 1146–47.)

In September 2014, Plaintiff's treating social worker, Barbara Sharp, noted Plaintiff continued to be noncompliant with treatment recommendations. (R. at 1164.) She missed a

number of appointments and it was noted that Plaintiff did not have any motivation to pursue mental health treatment. (*Id.*) Treatment notes through September 2014, show that Plaintiff was observed to be verbal and attentive despite her sad mood, and even calm and relaxed at several appointments. (R. at 1048, 1052, 1055, 1058, 1060, 1064, 1146–47.)

## 2. Trisha Campbell, L.I.S.W.

Plaintiff's counselor, Trisha Campbell, L.I.S.W., completed a Mental Medical Source Statement on January 4, 2011. (R. at 309–14.) Ms. Campbell reported that Plaintiff was "severely depressed," struggling with daily functioning, and that her medications had been only "minimally effective." (R. at 309.) Ms. Campbell listed Plaintiff's symptoms as anhedonia, appetite disturbance, decreased energy, feelings of guilt or worthlessness, difficulty thinking or concentrating, emotional withdrawal or isolation, memory impairment, sleep disturbance, and a history of multiple physical symptoms. (R. at 310.) She found that Plaintiff was "seriously limited, but not precluded," in the following areas: ability to remember work-like procedures, ability to understand and remember very short and simple instructions, ability to carry out short and simple instructions, ability to maintain regular attendance and be punctual within customary tolerances, ability to sustain a daily routine without special supervision, ability to work in coordination with or proximity to others without being unduly distracted, ability to make simple work related decisions, ability to ask simple questions or request assistance, ability to accept instructions and respond appropriately to criticism from supervisors, ability to get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes, and ability to interact appropriately with the general public. (R. at 311–12.)

Ms. Campbell further concluded that Plaintiff was "unable to meet competitive standards" in the following areas: ability to maintain attention for two–hour segment, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, ability to perform at a consistent pace without an unreasonable number and length of rest periods, ability to respond appropriately to changes in a routine work setting, ability to deal with normal work stress, and ability to be aware of normal hazards and take appropriate precautions. (*Id.*)

With regard to stress tolerance, Ms. Campbell identified the following work demands that Plaintiff would find stressful: speed, precision, complexity, exercising independent judgment, getting to work regularly, and remaining at work for a full work day. (R. at 313.) Ms. Campbell anticipated that Plaintiff would miss more than four days per month from work due to her psychological impairments. (*Id.*)

### 3. Marc Miller, Ph.D.

Dr. Miller examined Plaintiff on behalf of the state agency on July 13, 2009. (R. at 649–54.) Plaintiff presented as depressed and reserved. (R. at 650.) Plaintiff reported experiencing difficulty with anxiety and depression for the prior seven years as well as outbursts, withdrawal, and moodiness. (*Id.*) She further indicated that she did not have a history of psychiatric hospitalizations or mental health treatment. (*Id.*) Dr. Miller placed Plaintiff's depression at a level between 6/7 out of 10 and her anxiety at a level 6 out of 10. (R. at 651.) Dr. Miller noted that Plaintiff exhibited facial grimaces and nail biting behavior. (*Id.*) Plaintiff reported crying behavior although Dr. Miller did not observe crying during the evaluation. Plaintiff also reported passive suicidal thoughts, poor energy levels, and fatigue, as well as difficulty with mind racing, worry, and pain.

Dr. Miller found Plaintiff's insight and judgment "good," her social adaptation "fair," and her self esteem, motivation, and coping skills "poor." (*Id.*) Dr. Miller diagnosed Plaintiff with a dysthymic disorder (moderate to severe); a generalized anxiety disorder (moderate); and a pain disorder with psychological factors and medical condition. (R. at 653.) He assigned Plaintiff a GAF score of 55. (*Id.*) Dr. Miller found Plaintiff to possess "adequate intelligence" and concluded that she had no impairment in her "ability to understand, remember, and carry out routine job instructions." (R. at 652.) He further found that Plaintiff was mildly impaired in her ability to maintain attention and concentration and moderately impaired in her ability to persist in task completion and to "interact with co–workers, supervisors, and the public . . . due to her anxiety, depression, [and] agitation." (*Id.*) Finally, Dr. Miller opined that Plaintiff's "ability to deal with stress and pressure, in a work setting, indicates marked impairment [because] she has poor coping skills and tends to internalize a great deal." *Id.*)

### 4. State agency review

In July 2009, Jennifer Swain, Psy. D., a state-agency psychologist, reviewed the medical record and assessed Plaintiff's mental condition. (R. at 655–72.) Dr. Swain based her evaluation on the medically determinable impairments of a moderate to severe dysthymic disorder, a moderate generalized anxiety disorder, and a "pain disorder [with] psychological factors and medical condition." (R. at 658, 660, 661.) Dr. Swain found that Plaintiff had mild restrictions of activities of daily living; moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace; and no episodes of decompensation. (R. at 665.)

Dr. Swain also found that the evidence did not establish the presence of the "Part C" criteria. (R. at 666.) In the check-the-box portion of the assessment, Dr. Swain found that Plaintiff was moderately limited in the following areas: the ability to understand and remember

detailed instructions, the ability to carry out detailed instructions, the ability to work in coordination with or proximity to others without being distracted by them, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism with supervisors, and the ability to respond appropriately to changes in the work setting.   (R. at 669–70.)

In the narrative portion of the assessment, Dr. Swain noted that Plaintiff's statements were credible.   She also noted Dr. Miller's opinion that Plaintiff would have marked limitations in stress tolerance, but concluded that the marked limitations were not supported by the medical evidence or Plaintiff's reported activities of daily living.   Dr. Swain therefore assigned "only partial weight" to Dr. Miller's opinion.   Dr. Swain opined that Plaintiff "would be capable of performing simple and moderately difficult tasks in a work environment that does not have strict production quotas."   (R. at 671.)   On January 9, 2010, state-agency psychologist Caroline Lewin, Ph. D. affirmed Dr. Swain's assessment.   (R. at 727.)

## B.  Records Relating to Plaintiff's Obesity Claim

The medical record shows Plaintiff's height is 5'2."   (R. at 732.)   A review of the medical evidence shows Plaintiff's weight ranged from 245 lbs. in January 2009 to 268 lbs. in February 2014.   (R. at 329, 694, 700, 732, 1412.)   At 5'2" 250 lbs. her BMI is over 45.   That BMI puts her at the 98th percentile.

James Sardo, M.D., a physical medicine and rehabilitation specialist, treated Plaintiff for a L5/S1 disk bulge with right lower extremity radiculopathy, Bilateral plantar fasciitis and morbid obesity beginning in February 2010.   (R. at 1101–02.)   In September 2010, Dr. Sardo measured

Plaintiff's weight at 256 pounds.   (R. at 797.)   In his Medical Source Statement prepared on May 6, 2014, Dr. Sardo listed obesity in his diagnosis along with lumbar disc bulge and fibromyalgia. (R. at 1026.)   Dr. Sardo continually counseled Plaintiff regarding her weight:   In June 2010, he suggested she continue with weight loss (R. at 798); in September 2010, he recommended she discontinue her intake of soda pop (R. at 797); in December 2010, he reviewed the importance of weight loss.   (R. at 801.)

## IV.    THE ADMINISTRATIVE DECISION

On June 18, 2015, the ALJ issued his decision.   (R. at 846–58.)   Plaintiff met the insured status requirements through December 31, 2013.   At step one of the sequential evaluation process,[1]   the ALJ found that Plaintiff had not engaged in substantially gainful activity since August 1, 2007, the alleged onset date.   (R. at 848.)   The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine; fibromyalgia; bilateral carpal tunnel syndrome; diabetes mellitus; obesity; anxiety; pain disorder; and depression.   (*Id.*)   The ALJ

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five–step sequential evaluation of the evidence.   *See* 20 C.F.R. §416.920(a)(4).   Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

determined that Plaintiff's right elbow recurrent lateral epicondylitis and migraine headaches were non-severe impairments. (R. at 848–49.) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 849.) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk for 6 hours in an 8 hour workday; sit for 6 hours in an 8 hour workday; unlimited pushing and pulling except as defined by the ability to lift/carry; frequent bilateral handling and fingering; occasional climbing of ladders, ropes or scaffolds; simple, routine and repetitive tasks; occasional, superficial contact with co–workers, supervisors and the general public; and work with no strict time or production demands.

(R. at 851.) In reaching this determination, the ALJ assigned "some weight" to Doctors Swain and Lewin's opinions finding that Plaintiff was "more limited than assessed." (R. at 855.) The ALJ gave Dr. Miller's opinion "some" weight, but determined that Dr. Miller's conclusions that Plaintiff would have marked difficulties in dealing with the stress and pressure of a work setting was inconsistent with his own observations, the mental status findings by other providers, Plaintiff's noncompliance with mental health treatment, and her activities of daily living. (*Id.*)

The ALJ determined that Ms. Campbell's opinion was only entitled to "little weight" as she was not an acceptable medical source under SSR 06–03p; also finding that her opinion was inconsistent with contemporaneous treatment records and the discharge report from Scioto from 2012, as well as Plaintiff's sporadic mental health treatment, her noncompliance with treatment recommendations, mental status findings in the record, and her activities of daily living. (R. at 856.)

Relying on the VE's testimony, the ALJ concluded that Plaintiff can perform her past relevant work as a machine operator, along with other perform jobs that exist in significant numbers in the national economy.   (R. at 856–57.)   He therefore concluded that Plaintiff was not disabled under the Social Security Act.   (R. at 858.)

## V.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").   Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.   The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision.   *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).   Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"   *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where

that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"

*Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir.

2007)).

## VI.    LEGAL ANALYSIS

In her Statement of Errors, Plaintiff argues that the ALJ erred by failing to properly

consider and assess her mental health impairment.   (Plaintiff's Statement of Errors ("SOE") at

21–28, ECF No. 13.)   Plaintiff also contends that the ALJ erred at by failing to properly consider

and assess her impairment of obesity.   (*Id.* at 2–14).

### A.  The ALJ's decision is supported by substantial evidence

Plaintiff contends the ALJ erred in his assessment of Plaintiff's mental impairments,

arguing that substantial evidence does not support his RFC and non-disability finding.

Previously, the Court held that it was unable to conclude that substantial evidence supported the

ALJ's evaluation and assessment of Plaintiff's mental impairments and her credibility because the

prior ALJ, ALJ Terry, misstated important evidence and failed to consider other relevant evidence.

Here, Plaintiff argues that the second ALJ, ALJ Giorgione, failed to support his decision with

substantial evidence.   She specifically contends that ALJ Giorgione failed to appropriately weigh

the opinions of Ms. Campbell and Dr. Miller in formulating the RFC.   Although less clear, it also

seems that the Plaintiff contests the ALJ's credibility assessment of her subjective complaints.

As discussed in detail below, the Undersigned finds that although other contrary evidence exists in

the record, in reconsideration of Plaintiff's claims, ALJ Giorgione properly supported his decision

with substantial evidence.   *Blakley*, 581 F.3d   at 406 (quoting *Key*, 109 F.3d at 273 (6th Cir.

1997)) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even

if there is substantial evidence in the record that would have supported an opposite conclusion.'").

### 1. The ALJ reasonably considered medical opinions in the record

ALJ Terry erred by adopting the opinions of the state agency reviewing psychologists without considering an entire exhibit consisting of treatment notes from Scoioto ("SPVMHC"), including Plaintiff's counselor, Trisha Campbell's opinion, which impacted his review of Dr. Miller's opinion.   On remand, ALJ Giorgione remedied ALJ Terry's errors and properly weighed the opinions of Ms. Campbell and Dr. Miller.   ALJ Giorgione determined that Plaintiff's allegations of debilitating social functioning deficits are inconsistent with mental status findings throughout the record, an unimpressive mental health treatment history,[3] and high-functioning activities of daily living.

An ALJ is required to "evaluate every medical opinion" against a variety of factors, including the nature of the treatment relationship, the supporting medical basis for the opinion, and the overall consistency with the record as a whole.   20 C.F.R. §§ 404.1527(d) and 416.927; *Norris v. Comm'r of Soc. Sec.*, 461 Fed. App'x 433, 438–39 (6th Cir. 2012).   An opinion from a treating source is "'accorded the most deference by the SSA' because of the 'ongoing treatment relationship' between the patient and the opining physician."   *Id.* (quoting *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007)).   Non-treating sources who physically examine a claimant but who do not have or did not have an ongoing treatment relationship with the claimant fall next along the continuum in terms of weight.   *Id.* (citing *Smith*, 482 F.3d at 875).

Where an ALJ's opinion satisfies the goal of § 416.927 and is otherwise supported by substantial evidence, the failure to explicitly provide the weight assigned is harmless.   *See, e.g.*,

---

[3] Plaintiff also argues that the ALJ never explained why he found Plaintiff's mental health treatment "unimpressive."   (SOE at 24.)   Contrary to Plaintiff's assertion, however, the ALJ, explained that he based his opinion that Plaintiff's treatment history was unimpressive on the fact that "claimant was non-compliant with treatment recommendations, missed numerous appointments, and was found to have declined motivation for mental health treatment."   (R. at 854.)

*Pasco v. Comm'r of Soc. Sec.,* 137 F. App'x 828, 839 (6th Cir. 2005) (harmless error where the ALJ failed to mention or weigh the report of consultative neurologist who only evaluated plaintiff once and was not a treating source); *Dykes v. Barnhart*, 112 F. App'x 463, 467–69 (6th Cir. 2004) (failure to discuss or weigh opinion of consultative examiner was harmless error); *cf. Friend*, 375 F. App'x at 551 (explaining that the treating physician rule "is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Plaintiff first takes issue with the ALJ's treatment of the opinions of state agency reviewing psychologists Jennifer Swain, Psy. D. and Caroline Lewin, Ph. D. (SOE at 21–24.) She argues that ALJ Giorgione repeated ALJ Terry's errors in relying too heavily on the opinions. She further asserts that any reliance on the opinions of Dr. Swain or Dr. Lewin is invalid, because the doctors did not review the mental health treatment notes from SPVMHC. As the following analysis demonstrates, ALJ Giorgione, however, remedied the treatment the previous ALJ applied to the opinions of Doctors Swain and Lewin.

Previously, ALJ Terry erred by failing to consider all the evidence in the record and as a result gave Dr. Swain's and Dr. Lewin's opinions "significant weight." (R. at 23.) On remand, the ALJ, after considering all the evidence in the record, including Plaintiff's treatment history and

activities of daily living, gave the opinions "only some weight," finding Plaintiff was "more limited than assessed." (R. at 855.) The ALJ properly performed his obligation to review and weigh all of the medical opinions and his decision is supported by substantial evidence. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity.") (quoting *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citation omitted); 20 C.F.R. § 404.1527(e)(2)(i) (State agency consultants are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."); *see also Lucido v. Barnhard*, 121 F. App'x 619, 622 (6th Cir. 2005) ("the reviewing physicians . . . have the strongest claims to neutrality.").

Further, to the extent that Plaintiff argues the ALJ erred in giving the opinions "only some weight" because they authored the opinions in 2009 without a review of the treatment records from SPVMHC, remand is not merited. There is "no categorical requirement that [a] non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record." *Helm v. Comm'r of Soc. Sec.*, 405 F. App'x 997, 1002 (6th Cir. 2011) (quoting SSR 96–6p). Accordingly, the ALJ's decision to grant "some weight" to the opinions is supported by substantial evidence.

Plaintiff also contests the "little weight" given to the opinion of Ms. Campbell. To begin, the Undersigned finds that the ALJ did not err in finding Ms. Campbell was not an acceptable medical source under SSR 06–03p. Ms. Campbell is a licensed social worker who worked with Plaintiff as her therapist. Under SSR 06–03p, Ms. Campbell's opinion is considered evidence from an "other source" not a medical source. SSR 06–03p, 2006 WL 2329939, at *2 (Aug. 9, 2006); *see generally* 20 C.F.R. §§ 404.1513(d), 416.93(d) (stating that "other sources" include

17

nurse practitioners, physician's assistants, *licensed clinical social workers*, naturopaths, chiropractors, audiologists, therapists) (emphasis added). The ALJ moreover, did not base his rejection of Ms. Campbell's opinion on her status as an "other source" but also provided that her opinion is "markedly inconsistent" with the record.

The ALJ reasoned that Ms. Campbell's opinion, finding Plaintiff seriously limited as well as unable to meet competitive standards in most areas of mental function, inconsistent with "subsequent treatment notes and a discharge summery from Scioto Paint Valley Mental Health, which consistently demonstrate the claimant's noncompliance with recommended treatment and primary interest in obtaining Social Security benefits rather than a good faith attempt at receiving mental health treatment." (R. at 856.) For example, Plaintiff was discharged from SPVMHC in July 2012, after almost two years of treatment. (R. at 854, 1041–42.) In the discharge paperwork, providers at SPVMHC noted that Plaintiff had been "coming for more than 2 years hoping to obtain Social Security benefits so she would have an income [without] working," that Plaintiff "continued to hope for Social Security benefits and had no interest in earning a paycheck," that she complained mostly about her physical health problems, and that she "was not invested in attending to groups to learn coping skills, decision making skills, etc." (*Id.*) Such inconsistency between Plaintiff's discharge paperwork and Ms. Campbell's opinion provide substantial evidence for finding Ms. Campbell's opinion invalid. Accordingly, the ALJ did not err in granting Ms. Campbell's opinion "little weight". *Clark ex rel. S.R.C. v. Comm'r of Soc. Sec.*, No. 5:12-cv-1745, 2013 WL 3007154, at *9 (N.D. Ohio June 11, 2013) ("An ALJ is not required to set forth good reasons for rejecting the opinion of a social worker.").

Plaintiff finally argues that the ALJ erred by not providing sufficient details to support his grant of "some weight" to Dr. Miller's opinion. (SOE at 26.) The ALJ did not err in granting Dr.

Miller's opinion "some weight." As explained in his decision, the ALJ found parts of Dr. Miller's opinion consistent with the record, including his opinions that Plaintiff "has no impairment in her ability to understand, remember, and carry out routine job instructions, mild impairment in maintaining attention and concentration, and moderate impairment in interacting with others and persistence in task completion." (R. at 855.)

The ALJ, however, only gave Dr. Miller's opinion "some weight" because, as he explained, he found Dr. Miller's opinion that Plaintiff has marked impairment in dealing with the stress and pressure of a work setting inconsistent with Dr. Miller's own mental status findings, objective medical evidence in the record, and Plaintiff's daily activities. (*Id.*) For example, the ALJ reasoned that although Dr. Miller noted Plaintiff appeared depressed with "poor motivation and coping skills" when she presented for her examination in July 2009, he further observed that Plaintiff "was cooperative and mannerly with good eye contact, normal psychomotor response, normal speech and fair social adaption ability." Additionally, he found that Plaintiff has the ability to multi-task "two or three tasks at a time." (R. at 651.) An ALJ does not need to exhaustively explain the weight given to an examining consultative opinion. *See, e.g.*, *Dykes ex rel. Brymer*, 112 F. App'x at 468 (noting that "if the refusal to even acknowledge the opinion of a treating physician was harmless error . . . then the ALJ's failure in the present case to discuss thoroughly the opinion of a consultative examiner does not warrant reversal."). Thus, the Undersigned finds that the ALJ sufficiently explained his reasoning for the weight given to Dr. Miller's opinion and his decision is supported by substantial weight.

### 2. The ALJ's reasonably assessed Plaintiff's credibility

In addition, she appears to challenge the ALJ's credibility assessment regarding her complaints of debilitating limitations. Plaintiff posits that the ALJ erred in assessing her daily

activities, claiming that his reasoning in finding her as having "high functioning activities of daily living" was "unclear." (SOE at 25–26.) The Undersigned disagrees.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248.

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996); *but see Storey v. Comm'r of Soc. Sec.*, No. 98–1628, 1999 WL 282700,

at *3 (6th Cir. Apr. 27, 1999) ("[T]he fact that [the ALJ] did not include a factor-by-factor discussion [in his credibility assessment] does not render his analysis invalid.").

In evaluating Plaintiff's credibility with respect to his subjective claims, the ALJ must determine whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Second, if the ALJ finds that such impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Kalmbach v. Comm'r or Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011). Pursuant to SSR 16–3p, the ALJ must evaluate seven factors in determining credibility:

> In addition to using all the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3) and 416(c)(3). These factors include:
>
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of pain other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16–3P, 2016 WL 1119029 (March 16, 2016).

SSR 16-3p tasks the ALJ with explaining his credibility determination with sufficient specificity as "to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Brothers v.*

*Berryhill*, Case No. 5:16-cv-01942, 2017 WL 29125, at *11 (N.D. Ohio June 22, 2017) (citing *Rogers*, 486 F.3d at 248).

Upon review of Plaintiff's reported daily activities, the ALJ reasonably concluded that she had "high functioning activities of daily living." *See Hensley v. Comm'r Soc. Sec.*, Case No. 1:15-cv-11, 2017 WL 1055152, at *5 (S.D. Ohio March 21, 2017) (finding the ALJ properly evaluated plaintiff's daily activities in assessing credibility).

As applied here, in terms of her activities of daily living, in her application for disability, Plaintiff described her hobbies as "watching TV, listen to music [stet], ride 4–wheeler [stet], [and] mushroom hunting." (R. at 259.) She stated that she rides the 4–wheeler once a month and mushroom hunts once a year. (*Id.*) Plaintiff further reported taking care of her two children, cooking, doing laundry daily, dusting once a week, and shopping once a week. (R. at 256, 258.) The ALJ reasonably considered these activities to be inconsistent with Plaintiff's assertions of debilitating disability and substantial evidence supports the ALJ's assessment of Plaintiff's subjective complaints. As the ALJ noted, a review of Plaintiff's activities of daily living reveals that they are inconsistent with her "debilitating allegations of pain and irritability." (R. at 854.) Because the ALJ made a reasoned and reasonable decision supported by substantial evidence, including his findings regarding her daily activities, in evaluating Plaintiff's subjective complaints, the ALJ's assessment of credibility is entitled to "great weight and deference." *Infantado*, 263 F. App'x at 475. Accordingly, the Undersigned finds that the ALJ reasonably concluded that Plaintiff was not entirely credible and that substantial evidence supports his reasons.

### B. The ALJ did not fail to consider the impact of Plaintiff's obesity

In her second contention of error, Plaintiff alleges that the ALJ failed to assess the effects

of Plaintiff's obesity in her RFC.   (SOE at 30.)   SSR 02–1p provides that a claimant's obesity

will be considered in determining whether a claimant has a severe impairment, in determining

whether a claimant's impairments meet or equal a listed impairment, and in determining whether

the claimant's impairments prevent her from doing her past work or any other work by considering

the functionally limited effects of her obesity in assessing her ability to do work activity.   *See* 02–

01p, 2002 WL 628049, 67 Fed. Reg. at 57, 861–63.   SSR 02–01p does not, however, mandate a

particular mode of analysis for an obese plaintiff.   *Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12

(6th Cir. 2006).   As the Sixth Circuit explains,

> Social Security Ruling 01–01p does not mandate a particular mode of analysis.   It
> only states that obesity, in combination with other impairments, "may" increase the
> severity of other limitations.   It is a mischaracterization to suggest that Social
> Security Ruling 02–01p offers any particular procedural mode of analysis for obese
> disability claimants.

*Id.*

Contrary to Plaintiff's allegations, the record supports a finding that the ALJ sufficiently

considered Plaintiff's obesity.   His consideration is evidenced in the explicit discussion where he

found that Plaintiff is morbidly obese with a BMI of 48 and that Plaintiff has been noncompliant

with treatment recommendations related to her obesity, such as diet and exercise, which would

have improved both her diabetes and obesity.   (R. at 853.)   The ALJ also noted, "I have fully

considered obesity in the context of the overall record evidence in making this decision" and stated

that the RFC "more than accounts for her diabetes and obesity by limited her to medium work

activity."   (R. at 854.)   Plaintiff, on the other hand, has come forward with nothing in the record

to suggest that the ALJ failed to consider how obesity impacted her limitations.   Indeed, Plaintiff

points to any evidence, beyond her mere conjecture, that her obesity caused any limitations greater

than those assessed by the ALJ in the RFC.   Accordingly, the ALJ sufficiently addressed

Plaintiff's obesity in formulating the RFC. *See, e.g.*, *Stone v. Colvin*, No. 14–261–WOB–CJS, 2015 WL 5634322, at *7 (E.D. Ky. Aug. 26, 2015), *R&R adopted by*, 2015 WL 5611605 (E.D. Ky. Sept. 21, 2015) (concluding that ALJ's finding that obesity was a "severe" impairment, along with a statement that all impairments were considered at steps three through five, was sufficient to discharge the ALJ's obligations under SSR 02–01p.) (citing *Smith v. Comm'r of Soc. Sec.*, No. 3:13-cv-713, 2014 WL 1898523, at *12 (N.D. Ohio May 12, 2014) (no requirement that ALJ provide specific analysis regarding consideration of obesity and statement that ALJ considered all impairments sufficient to demonstrate obesity considered).

Again, in summary, Plaintiff does not identify any specific physical limitation that should have been, but was not, included in the RFC due to her obesity. As a result, the ALJ was not required to further address Plaintiff's obesity. *See Cranfield v. Comm'r of Soc. Sec.*, 79 F. App'x 852, 857–58 (6th Cir. 2003) (in rejecting claim that obesity was not properly considered, the court noted that the claimant "provided no evidence that obesity affected her ability to work"); *see also Rutherford v. Barnhart*, 399 F.3d 546, 553 (3rd Cir. 2005) (generalized claim that obesity exacerbates impairments is insufficient without medical evidence specifying how or in what way it does so); *Skarbek v. Barnhart*, 390 F.3d 500, 504, (7th Cir. 2004) (rejecting speculation that obesity exacerbated impairments is insufficient). Accordingly, the Undersigned finds that the ALJ did not err in assessing the impact of Plaintiff's obesity when formulating the RFC.

## VII.    CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECCOMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

# VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**IT IS SO ORDERED**.

Date: August 17, 2017                                  _____/s/ *Elizabeth A. Preston Deavers*_____
                                                        ELIZABETH A. PRESTON DEAVERS
                                                        UNITED STATES MAGISTRATE JUDGE